UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jean Alexis,                                            Civ. No. 21-1882 (PAM/DTS)

    Plaintiff,

v.                                                      **MEMORANDUM AND ORDER**

Sholom Shaller Family East Campus,

    Defendant.

---

This matter is before the Court on Defendant's Motion to Dismiss. For the following reasons, the Motion to Dismiss is granted.

**BACKGROUND**

Plaintiff Jean Alexis is a native of Haiti. (Compl. (Docket No. 3) ¶ 10.) He alleges that he worked as a nursing assistant at a nursing-home facility operated by Sholom Homes East, Inc.[1] ("Sholom") for more than three years. (Id.) Alexis was fired in October 2020; he contends that his termination was "pretexted under different discriminatory maneuvers or motives to harass, coerce, retaliate against the Plaintiff." (Id.)

In particular, Alexis alleges that in August 2019 the "day nurse manager," a white woman named Barbara Hickman, "targeted the plaintiff with a series of false claim propaganda." (Id. ¶ 11.) Alexis alleges that two other nurses complained to Ms. Hickman that Alexis was not charting his interactions with patients correctly or was failing to chart some interactions. When Alexis sent an email in response, the "defendant" "throw

---

[1] Defendant avers that its correct name is Sholom Homes East, Inc., not Sholom Shaller Family East Campus. (Def.'s Supp. Mem. (Docket No. 8) at 1 n.1.)

profanity on the mane of the plaintiff . . . ." (Id.)  Alexis contends that he overheard Ms. Hickman say, "[w]ho this black guy thought he is?  Did he have these things where he came from?" (Id.)  According to Alexis, Ms. Hickman had never accused others of not charting correctly even when those individuals did not chart correctly. (Id.)

Alexis further asserts that in February and March 2020, other employees or residents falsely accused him of several incidents of misconduct. (Id. ¶¶ 12-14.)  On one occasion, a resident ostensibly complained about the conduct of a "Black aid" but when Alexis's supervisor asked Alexis not to enter that resident's room, Alexis informed her that he had not worked on the night of the alleged misconduct.  (Id. ¶ 12.)  Alexis attributes these accusations to "being targeted, retaliate because of the plaintiff critics about the defendant (Sholom) unprofessional administrative manners." (Id. ¶ 13.)

On May 8, 2020, Alexis's supervisor "convoked the plaintiff to receive an employee corrective action form" about these allegedly false complaints. (Id. ¶ 14.)  Alexis disputed the charges in the corrective action form and apparently Sholom ultimately required Alexis to attend an additional training class but did not otherwise discipline him. (Id.)  In June 2020, a resident accused Alexis of assault, and Alexis was put on paid administrative leave for a number of days. (Id. ¶ 16.)  After an investigation, Sholom found no foundation for the assault allegation and Alexis returned to work. (Id.)  He believed that the investigation and administrative leave were retaliation, harassment, and discrimination. (Id.)

In late September 2020, Alexis alleges that he was scheduled to work but was "taken off the schedule without any notice, or prealable instruction." (Id. ¶ 17.)  Three days later, another employee called Alexis at home to ask him about contacts with a Covid-positive

resident.  (Id. ¶ 18.)  When Alexis informed her that he had not worked at the facility on the night in question, she "abruptly ends up the phone call."  (Id.)

On October 1, 2020, Alexis received a letter from Sholom dated September 18, 2020, regarding required Covid testing.  (Id. ¶ 19.)  Although the Complaint is less than clear on this point, it appears that in this letter Sholom notified its nursing staff of the new federal requirement that all skilled nursing staff at nursing-home facilities be tested regularly for Covid.  (Louwagie Decl. (Docket No. 11) Ex. B.)  Alexis also appears to claim that he was not paid sufficiently for some of his hours but he did not accept Sholom's attempt to reimburse him for some back pay after his termination, believing that it was Sholom's attempt to cover up its discriminatory practices.  (Compl. ¶ 19.)  According to Sholom, the back-pay payment was increased pay due to the Covid-19 pandemic.  (Louwagie Decl. Ex. C.)

On October 30, 2020, Alexis received another letter terminating his employment for failure to comply with the mandated Covid-19 testing protocols.  (Compl. ¶ 20; see also Louwagie Decl. Ex. D.)  According to Alexis, these letters show that he was being discriminated against and harassed "because of [his] color, race, and national origin."  (Compl. ¶ 20.)

Alexis filed a charge of discrimination with the EEOC.  The charge itself is not in the record.  The EEOC dismissed the charge and sent Alexis a notice of right to sue dated June 9, 2021.  (Compl. Ex. 1.)  This lawsuit followed.  The Complaint asserts discrimination under Title VII on the basis of race, color, and national origin, as well as "Coercion Harrassement [sic] and intimidation."  (Compl. ¶ 3.e.)

**DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true. Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012).

To prevail on his claim that he was discriminated against on the basis of race, color, or national origin, Alexis must establish that he "(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination." Schaffhauser v. United Parcel Serv., Inc., 794 F.3d 899, 903 (8th Cir. 2015) (quotation omitted). While "a plaintiff need not plead facts establishing a prima facie case of discrimination under McDonnell Douglas in order to defeat a motion to dismiss," mere "conclusory allegations of . . . discrimination" are insufficient and a pleading asserting only bare allegations of discrimination should be dismissed. Hager v. Arkansas Dep't of Health, 735 F.3d 1009, 1014, 1015 (8th Cir. 2013). Moreover, because a Complaint must provide sufficient facts to establish a "plausibl[e] . . . entitlement to relief," Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), the elements of a prima facie case are "part of the background against which a plausibility determination should be made."

4

Blomker v. Jewell, 831 F.3d 1051, 1056 (8th Cir. 2016) (quotation omitted).

Alexis has pled only one potential adverse employment action: his termination in October 2020. As Sholom notes, the other allegedly adverse employment actions—requiring additional training or placing Alexis on paid administrative leave while it investigated a resident's assault allegations—are not adverse employment actions as a matter of law. See Singletary v. Missouri Dep't of Corr., 423 F.3d 886, 892 (8th Cir. 2005) (Plaintiff "did not suffer an adverse employment action by being placed on administrative leave"). But Alexis has not pled sufficient facts from which a reasonable factfinder could determine that his termination was in any way connected to his allegations that he was discriminated against on the basis of race, color, or national origin. See Warmington v. Bd. of Regents of Univ. of Minn., 455 F. Supp. 3d 871, 882 (D. Minn. 2020) (Tostrud, J.) (noting that a discrimination plaintiff facing a Rule 12(b)(6) motion must set forth "factual allegations plausibly showing that the defendant manifested bias relevant to the adverse employment action").

Moreover, even accepting Alexis's facts as true, it is clear from the documents to which he cites—namely the September 18 and October 30 letters—that he was fired for refusing to be tested for Covid as federal regulations required. This legitimate reason for terminating his employment is not a pretext for discrimination—Sholom is required to abide by federal law. And while Alexis now claims that he never refused to be tested, he does not dispute that he did not undergo testing as Sholom required in September and October of 2020, or at the least that he did not inform Sholom that he had been tested as Sholom required.

Finally, with regard to the discrimination claim, Alexis has not pled that any similarly situated employee was treated differently than he was with regard to the Covid testing requirement. He does not claim that white employees were exempt from mandatory testing or that a white employee who refused to be tested was not fired. He has not set forth any plausible inference that he was discriminated against.

Similarly, he has not sufficiently stated any claim for harassment or retaliation. Workplace harassment is actionable if it "affect[s] a term, condition, or privilege of [Alexis's] employment. Singletary, 423 F.3d at 892. "Hostile work environment harassment occurs when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Id. (quoting Tademe v. St. Cloud State Univ., 328 F.3d 982, 991 (8th Cir. 2003)).

The alleged "harassment" of which Alexis complains is not severe enough to alter the conditions of his employment as a matter of law. Accepting his allegations as true, the fact that a coworker allegedly reported him for something he did not do and then made an offensive comment about him, and residents twice accused him of misconduct, at least once apparently confusing him with another Black employee, does not rise to the level of severe and pervasive sufficient to give rise to a claim of harassment under Title VII.

A claim of retaliation requires Alexis to establish that he engaged in protected conduct, and as a result of that protected conduct he suffered an adverse employment action. Eliserio v. United Steelworkers of Am. Local 310, 398 F.3d 1071, 1078-79 (8th Cir. 2005). Alexis contends that his response to Ms. Hickman's accusations constitutes

6

engaging in protected conduct.[2] He also asserts that he called out his coworkers and residents for their racist conduct on several occasions, including in an October 14, 2020, email. (Alexis Decl. (Docket No. 16) Ex. 12.) But even if these actions could be considered protected conduct, which is doubtful, they are not causally connected to the only actionable adverse employment action here: Alexis's termination. His complaints regarding Ms. Hickman's comments were made in August 2019, more than a year before his termination. And although his October 2020 email was close in time to his termination, Sholom's undisputed justification for terminating Alexis—his failure to undergo federally required Covid tests—demonstrates that there is no causal connection between any protected conduct and his termination.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** the Motion to Dismiss (Docket No. 6) is **GRANTED** and the Complaint is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: Wednesday, November 17, 2021

                                          *s/ Paul A. Magnuson*
                                          Paul A. Magnuson
                                          United States District Court Judge

---

[2] The email Alexis sent in response to his interaction with Ms. Hickman did not mention any racial comments but discussed only the accusations regarding charting errors. (Alexis Decl. (Docket No. 16) Ex. 1.)